# United States Tax Court

CORRECTED
T.C. Summary Opinion 2023-34

KRISTEN L. QUEVY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 13319-21S.                    Filed December 12, 2023.

————————

*Charles O. Cobb*, for petitioner.

*Sarah A. Herson*, *Jordan S. Musen*, and *Regina L. Ahn*, for respondent.

SUMMARY OPINION

BUCH, *Judge*: This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed. Under section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion may not be treated as precedent for any other case.

Acuity Brand Lighting (Acuity) made a payment to Ms. Quevy to settle a claim of wrongful termination, and Ms. Quevy excluded 90% of that payment from her gross income for 2018. Taxpayers may exclude from gross income damages received on account of personal physical injury or physical illness. Because the payment to Ms. Quevy was for

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

wrongful termination, she must include the entire payment in gross income.

*Background*

Ms. Quevy began working for Acuity in 2009. At the time of her departure in 2017, she worked as a Lead Design Engineer in the Hydrel Division.

Ms. Quevy suffers from anxiety, which conflicted with her work at Acuity. The work conditions exacerbated her anxiety, which led to migraines and agoraphobia. And during her time at Acuity, Ms. Quevy informed her employer that she was assaulted, which worsened her anxiety. When Ms. Quevy's increased anxiety began to interfere with her work, Acuity permitted her to work from home. But by 2016 Ms. Quevy's supervisor asked her to return to work in person. Ms. Quevy told Acuity that she was not able to do so, and the company asked her to go on unpaid medical leave, which she did. While on leave she received short-term and long-term disability benefits. The experience of going on unpaid medical leave further worsened Ms. Quevy's anxiety.

Ms. Quevy's medical troubles worsened. Her anxiety, agoraphobia, and migraines led to alcoholism. She had planned to enter a residential treatment facility for an extended period to address her alcoholism, but before she could begin treatment, she discovered she was suffering from breast cancer. After undergoing treatment for breast cancer, Ms. Quevy entered residential treatment for alcoholism. When she left the facility, a care team consisting of a psychologist, a psychiatrist, and a general practitioner continued to look after her. These medical troubles resulted in her deducting over $125,000 of medical expenses for 2016 and 2017, combined.

A dispute arose with respect to Ms. Quevy's disability benefits. In response to a questionnaire from Ms. Quevy's disability benefits provider, all three members of her care team reported that the earliest she could return to work was November 2017. But on June 2, 2017, the disability benefits provider informed Ms. Quevy that she no longer qualified as disabled for the purpose of receiving benefits. The decision had the effect of terminating her disability benefits and clawing back contributions to her health insurance as of May 10, 2017. Ms. Quevy called Acuity's employee service center to discuss her medical benefits and discovered that her health insurance had converted to COBRA coverage and that she was responsible for all costs.

Ms. Quevy suffered a relapse with alcoholism and voluntarily admitted herself to a mental health facility. Soon after leaving the mental health facility in the summer of 2017, she was involved in a car accident that injured her spine.

After Ms. Quevy's disability benefits were terminated, Acuity's Human Resource department contacted her to discuss when she planned on returning to work. Ms. Quevy explained she would not be able to return until November of 2017. Acuity subsequently terminated Ms. Quevy's employment.

Ms. Quevy sought compensation from Acuity. The company initially offered to pay Ms. Quevy back wages, which she rejected. Ms. Quevy retained an attorney who sent two demand letters to Acuity on her behalf. The first demand letter set forth Ms. Quevy's potential claims "of discrimination and retaliation on the basis of her disabilities and requests for reasonable accommodation and wrongful termination." The second demand letter further elaborated on Ms. Quevy's claims of discrimination and wrongful termination. The demand letters expressed her intent to sue for damages for wrongful termination on account of Acuity's failure to accommodate her disabilities.

Ultimately, Acuity agreed to pay $75,000. The settlement agreement characterized that amount as being paid as "severance compensation" to Ms. Quevy to "resolve all issues between them, including but not limited to Employee's employment and the termination of that employment." The settlement agreement stated that the payment was for Ms. Quevy's "alleged damages, which includes alleged injuries incident to her employment with Employer, including those related to her purported personal injury and employment." Although there is a reference to a "purported personal injury," neither the settlement agreement nor the demand letters refer to any physical injury.

Acuity paid Ms. Quevy $75,000 in early 2018 and reported the payment on a Form 1099–MISC, Miscellaneous Income, as nonemployee compensation. Ms. Quevy included $7,500 of the settlement payment in gross income for 2018 but excluded the rest. She excluded it under the belief that it was excludable under section 104(a)(2) as damages received on account of personal physical injury or physical sickness.

The Commissioner sent Ms. Quevy a Notice of Deficiency, increasing her taxable income to include the remaining $67,500 of the

settlement payment. While residing in California, Ms. Quevy filed a Petition contesting the increased liability.

*Discussion*

Ms. Quevy argues that she may exclude from her gross income some or all of the settlement payment she received per section 104(a)(2) as damages on account of personal physical injuries or physical sickness. If we find that the payment is not excludable under section 104(a)(2), Ms. Quevy argues in the alternative that the settlement payment is excludable as compensation for amounts paid for medical care attributable to emotional distress. *See* I.R.C. § 104(a) (flush language).

The Commissioner argues that the settlement payment was compensation for wrongful termination, which is not excludable under section 104(a)(2). The Commissioner further argues that, for Ms. Quevy to exclude the payment as compensation for medical expenses, she must show she did not previously claim those expenses as an income tax deduction, or if she did, that she did not receive a tax benefit from that deduction.

We generally presume the Commissioner's determination of a deficiency to be correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). While the burden may shift to the Commissioner under section 7491(a) if certain conditions are met, Ms. Quevy has not claimed that the burden should shift, and the record in this case does not support shifting the burden.

Section 61(a) defines gross income as "all income from whatever source derived" unless excluded by a specific provision of the Code. Inclusions in gross income under section 61 are construed broadly, whereas exclusions from gross income are construed narrowly. *Commissioner v. Schleier*, 515 U.S. 323, 327–28 (1995); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955). Taxpayers bear the burden of showing that an income exclusion "falls squarely within the requirements for the exclusion." *Forste v. Commissioner*, T.C. Memo. 2003-103, 2003 WL 1889626, at *7.

I.    *Exclusion of Damages Under Section 104(a)*

Section 104(a)(2) excludes from gross income "the amount of any damages . . . received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical

injuries or physical sickness." Personal physical injury or physical illness excludes emotional distress. I.R.C. § 104(a) (flush language). The legislative history of section 104(a)(2) explains that "emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H.R. Rep. No. 104-737, at 301 n.56 (1996) (Conf. Rep.), *as reprinted in* 1996-3 C.B. 741, 1041. We have previously held that emotional distress includes conditions such as anxiety. *Longoria v. Commissioner*, T.C. Memo. 2009-162, 2009 WL 1905040, at \*8.

Although emotional distress is distinct from physical injury or sickness for the purpose of the section 104(a)(2) exclusion, damages for emotional distress may be excludable in limited circumstances. Damages received as compensation for "the amount paid for medical care . . . attributable to emotional distress" may be excluded from gross income. I.R.C. § 104(a) (flush language); *see Sanford v. Commissioner*, T.C. Memo. 2008-158, 2008 WL 2491676, at \*3 ("Emotional distress is not treated as a personal physical injury or physical sickness except for damages not in excess of the amount paid for medical care attributable to emotional distress."). Such an amount could, however, be subject to the tax benefit rule under section 111 to the extent a tax benefit was obtained from previously deducting that amount.

Damages are *on account of* personal physical injuries or physical sickness if there is a direct causal link between the action giving rise to the damages and the physical injury or physical sickness. *Blum v. Commissioner*, T.C. Memo. 2021-18, at \*7–8 (citing *Doyle v. Commissioner*, T.C. Memo. 2019-8, at \*11), *aff'd*, No. 21-71113, 2022 WL 1797334 (9th Cir. June 2, 2022); *see also Rivera v. Baker W., Inc.*, 430 F.3d 1253, 1257 (9th Cir. 2005). Personal injuries are not enough. Congress amended the gross income exclusion under section 104(a)(2) in 1996 to include only "physical" personal injuries. Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1605(b), 110 Stat. 1755, 1838.

When damages are received pursuant to a settlement agreement, the nature of the claim that gave rise to the settlement controls whether the damages are excludable under section 104(a)(2). *See United States v. Burke*, 504 U.S. 229, 237 (1992). To determine the nature of the claim, we look first to the terms of the agreement and, if the terms are ambiguous, to the facts and circumstances surrounding the settlement. *Rivera*, 430 F.3d at 1257.

Under the terms of the settlement agreement, Acuity compensated Ms. Quevy for a broad release of claims, both known and unknown. The agreement characterizes the payment as "severance compensation." It was intended to "resolve all issues between them, including but not limited to Employee's employment and the termination of that employment." The terms state that payment is "for [Ms. Quevy's] alleged damages, which includes alleged injuries incident to her employment with Employer, including those related to both her purported personal injury and employment." Although the agreement mentions "personal injuries," nothing in the agreement indicates that it is for *physical* injuries. Ms. Quevy contends that Acuity was well aware that she suffered an assault in the workplace, and that it was "against that backdrop that they use the word personal injury." However, the record does not support Ms. Quevy's reading of the agreement.

Even if we look beyond the agreement, the surrounding facts and circumstances also show that Acuity compensated Ms. Quevy for wrongful termination and not personal physical injuries or physical illness. Ms. Quevy retained counsel to pursue claims against Acuity. Her counsel sent Acuity two separate demand letters, both of which focused exclusively on "discrimination and retaliation on the basis of her disabilities" and "wrongful termination." The demand letters make clear the settlement agreement was to resolve Ms. Quevy's claims of discrimination and wrongful termination, not to seek compensation for a personal physical injury or physical illness. Because Ms. Quevy did not receive these damages on account of personal physical injuries or physical sickness, she must include them in gross income.

Neither may Ms. Quevy exclude the damages received under the theory that they were to compensate her for medical expenses incurred to treat her emotional distress. *See* I.R.C. § 104(a) (flush language). Although damages to compensate for medical care for emotional distress may be excludable, neither the agreement nor the demand letters refer to compensation for medical expenses.

II.    *Tax Benefit Rule*

Even assuming the settlement payment was intended to compensate Ms. Quevy for medical expenses incurred to treat her emotional distress, she has not established that she can exclude the payment from income. For 2016 and 2017 Ms. Quevy claimed deductions for medical expenses in excess of the settlement payment she received.

She has not established that she incurred medical expenses other than those for which she had already claimed deductions.

Section 111 codifies the common law Tax Benefit Rule, whereby taxpayers are required to include in gross income the recovery of any amount deducted for a prior year, unless it can be shown that the prior year deduction did not reduce the amount of tax. I.R.C. § 111(a). Reimbursement of previously deducted medical expenses fits squarely within section 111. Ms. Quevy did not establish an amount, if any, of medical expenses incurred that she had not already deducted. Thus, even if the settlement payment could be excluded because it was intended to compensate Ms. Quevy for her medical expenses, she failed to establish that she did not receive a tax benefit from previously deducting those medical expenses.

*Conclusion*

A payment made for wrongful termination is not excludable under section 104(a)(2) as a payment on account of personal physical injury or physical illness. And Ms. Quevy has not established that she received the payment on account of personal physical injury or physical illness. To the extent she argues the payment is excludable as compensation for medical expenses, she failed to establish that she had not previously received a tax benefit from deducting those expenses.

To reflect the foregoing and concessions made by the parties,

*Decision will be entered under Rule 155.*